Argued October 13; affirmed November 7; rehearing denied
December 12, 1939

# BENEFICIAL LOAN SOCIETY OF OREGON *v.*
# STATE TAX COMMISSION

(95 P. (2d) 429)

In Banc.

*Alfred P. Kelley,* of Portland (Teal, Winfree, Mc-Culloch, Schuler & Kelley, of Portland, and Jackson R. Collins, of New York City, on the brief), for appellant.

*Carl E. Davidson,* Assistant Attorney General (I. H. Van Winkle, Attorney General, and Ralph R. Bailey, Assistant Attorney General, on the brief), for respondent.

KELLY, J.   During the years 1933 and 1934, plaintiff, Beneficial Loan Society of Oregon, the Beneficial Loan Society of Salem, and the Beneficial Loan Society of Eugene were corporations organized and incorporated under the laws of Oregon, each of which had issued capital stock in the sum of $1,000.  During said years of 1933 and 1934, these three corporations were duly licensed under the Small Loan Act of the State of Oregon [Chap. 385, Sec. 2, Laws 1931] to conduct a small loan business in this state; and substantially the only business of each consisted of making personal loans of $300 or less at interest rates of not more than 3 per cent per month.

The Beneficial Industrial Loan Corporation was during the years 1933 and 1934 a corporation organized and existing under the laws of the State of Delaware, with its principal office at Wilmington, Delaware, where it maintains a sizable staff of employees, that the principal business of the Beneficial Industrial Loan Corporation during the years 1933 and 1934 was the holding of stock through controlling stock ownership in corporations engaged in the making of personal loans under the Uniform Small Loan Statutes of the several states, the receiving of dividends from such corporations, and the lending of money to such corporations for interest.

During the years 1933 and 1934 the said Beneficial Industrial Loan Corporation owned controlling interests [substantially all the issued stock] in corporations engaged in the making of personal loans under small loan statutes of the respective states in most of the states having such statutes in the United States; that the usual course of business of said Beneficial Industrial Loan Corporation was to control through stock

ownership a separate corporation in each center of population within the state in which said corporations operated.

Said Beneficial Industrial Loan Corporation of Delaware owned at least 95 per cent of the outstanding capital stock of the three Oregon corporations above mentioned. During the years 1933 and 1934, Charles H. Watts of New York was chairman of the board of directors of the Beneficial Industrial Loan Corporation, and was also president of each of said three Oregon corporations. During the years 1933 and 1934, H. S. Turner of New York was secretary of the Beneficial Industrial Loan Corporation, and was also secretary of each of said three Oregon corporations. The local managers of the respective Oregon corporations were designated as the treasurers of said corporations respectively; and a third individual, who resides in Oregon, also served as a director of said Oregon corporations. The respective boards of directors of said Oregon corporations consisted of the chairman of the board of directors of the Beneficial Loan Corporation, the respective local managers of said Oregon corporations and the Oregon resident aforesaid.

During said years 1933 and 1934, the Beneficial Management Corporation, a foreign corporation, wholly owned by the Beneficial Industrial Loan Corporation of Delaware, furnished auditing and management services to the Oregon corporations aforesaid; and employed a district manager, who supervised and directed the work of the local managers of said Oregon companies.

With respect to the business transacted during the years 1933 and 1934, the following tables numbered 1, 2 and 3 reflect the amount of the loans made by said

Oregon corporations; the amount of the sums borrowed by said Oregon corporations from the Beneficial Industrial Loan Corporation; the average outstanding loans of each of said Oregon corporations; the total charges collected; the percentage that charges collected bore to outstanding loans; percentage that gross charges collected paid to the Beneficial Industrial Loan Corporation bore to total outstanding loans; percentage that gross charges collected used to pay direct expenses or reported as income bore to total outstanding loans; percentage that gross charges collected and paid to the Beneficial Industrial Loan Corporation bore to total gross charges; net income reported without deducting interest claimed to have been paid to Beneficial Industrial Loan Corporation; interest so claimed to have been paid to Beneficial Industrial Loan Corporation; net income reported after deducting the amount of such alleged interest; percentage of net income claimed to have been paid as such interest; percentage of and net income reported for excise tax purposes.

TABLE 1.

Beneficial Loan Society of Oregon;

Outstanding loans—
January 1, 1933 ........................................................... $267,967.42
December 31, 1933 ...................................................... 259,397.37
December 31, 1934 ...................................................... 268,969.07

Balance of loans from Beneficial Industrial Loan Corporation—
January 1, 1933 ........................................................... $280,000.00
December 31, 1933 ...................................................... 274,000.00
December 31, 1934 ...................................................... 274,000.00

Interest paid to Beneficial Industrial Loan Corporation—
During 1933 ................................................................ $ 32,372.33
During 1934 ................................................................ 35,255.00

Rate of interest charged by Beneficial Industrial Loan Corporation ........................................................... 12%

Beneficial Loan Society of Eugene:

Outstanding loans—
| | |
|---|---|
| January 1, 1933 | $ 93,560.96 |
| December 31, 1933 | 82,964.23 |
| December 31, 1934 | 87,774.77 |

Balance of loans from Beneficial Industrial Loan Corporation—
| | |
|---|---|
| January 1, 1933 | $ 90,000.00 |
| December 31, 1933 | 78,000.00 |
| December 31, 1934 | 78,000.00 |

Interest paid to Beneficial Industrial Loan Corporation—
| | |
|---|---|
| During 1933 | $ 7,118.33 |
| During 1934 | 8,850.00 |

Rate of interest charged by Beneficial Industrial Loan Corporation ........ 12%

Beneficial Loan Society of Salem:

Outstanding Loans—
| | |
|---|---|
| January 1, 1933 | $125,987.45 |
| December 31, 1933 | 122,819.13 |
| December 31, 1934 | 131,256.41 |

Balance of loans from Beneficial Industrial Loan Corporation—
| | |
|---|---|
| January 1, 1933 | $122,000.00 |
| December 31, 1933 | 118,000.00 |
| December 31, 1934 | 124,000.00 |

Interest paid to Beneficial Industrial Loan Corporation—
| | |
|---|---|
| During 1933 | $ 13,700.00 |
| During 1934 | 16,155.50 |

Rate of interest charged by Beneficial Industrial Loan Corporation ........ 12%

TABLE 2.

Beneficial Loan Society of Oregon:

| | |
|---|---|
| Average outstanding loans 1933 | $263,682.39 |
| Total charges collected on outstanding loans 1933 | 79,824.17 |
| Percentage that charges collected bore to outstanding loans in 1933 | 30.23 |
| Percentage of gross charges collected, paid to Beneficial Industrial Loan Corporation in interest, to total outstanding loans in 1933 | 12.23 |

Percentage of gross charges collected, used to pay direct expenses or reported as income, to total outstanding loans in 1933 ........................................... 18.00

Percentage that gross charges collected, and paid to Beneficial Industrial Loan Corporation in interest bore to total gross charges collected in 1933 ........................................................................... 40.55

Average outstanding loans 1934 .................................... $264,183.22

Total charges collected on outstanding loans 1934 .. $ 78,630.76

Percentage that charges collected bore to outstanding loans in 1934 ......................................................... 29.75

Percentage of gross charges collected, paid to Beneficial Industrial Loan Corporation in interest, to total outstanding loans in 1934 ............. 13.34

Percentage of gross charges collected, used to pay direct expenses or reported as income, to total outstanding loans in 1934 ........................................... 16.41

Percentage that gross charges collected, and paid to Beneficial Industrial Loan Corporation in interest, bore to total gross charges collected in 1934 ......................................................................... 44.83

Beneficial Loan Society of Eugene:

Average outstanding loans 1933 .................................... $ 88,262.59

Total charges collected outstanding loans 1933 ......... 25,311.93

Percentage that charges collected bore to outstanding loans in 1933 ............................................... 28.67

Percentage of gross charges collected, paid to Beneficial Industrial Loan Corporation in interest, to total outstanding loans in 1933 ............. 8.06

Percentage of gross charges collected, used to pay direct expenses or reported as income, to total outstanding loans in 1933 ........................................... 20.61

Percentage that gross charges collected, and paid to Beneficial Industrial Loan Corporation in interest, bore to total gross charges collected in 1933 ......................................................................... 24.13

Average outstanding loans 1934 .................................... $ 85,369.50

Total charges collected outstanding loans 1934 ......... $ 26,712.56

Percentage that charges collected bore to outstanding loans in 1934 ............................................... 30.11

Percentage of gross charges collected, paid to Beneficial Industrial Loan Corporation in interest, to total outstanding loans in 1934 ............... 10.36

Percentage of gross charges collected, used to pay direct expenses or reported as income, to total outstanding loans in 1934 .................................... 19.75

Percentage that gross charges collected, and paid to Beneficial Industrial Loan Corporation in interest, bore to total gross charges collected in 1934 ........................................................................ 34.41

Beneficial Loan Society of Salem:

Average outstanding loans 1933 .................................. $124,403.29

Total charges collected on outstanding loans 1933 .. $ 38,291.56

Percentage that charges collected bore to outstanding loans in 1933 .............................................. 30.77

Percentage of gross charges collected, paid to Beneficial Industrial Loan Corporation in interest, to total outstanding loans in 1933 ............. 11.01

Percentage of gross charges collected, used to pay direct expenses or reported as income, to total outstanding loans 1933 ............................................ 19.76

Percentage that gross charges collected, and paid to Beneficial Industrial Loan Corporation in interest, bore to total gross charges collected in 1933 ........................................................................ 35.77

Average outstanding loans 1934 .................................... $127,037.77

Total charges collected on outstanding loans 1934 .. $ 38,407.42

Percentage that charges collected bore to outstanding loans in 1934 .............................................. 30.23

Percentage of gross charges collected, paid to Beneficial Industrial Loan Corporation in interest, to total outstanding loans in 1934 ............. 12.71

Percentage of gross charges collected, used to pay direct expenses or reported as income, to total outstanding loans 1934 ............................................ 17.52

Percentage that gross charges collected, paid to Beneficial Industrial Loan Corporation in interest, bore to total gross charges collected in 1934 ........................................................................ 42.06

## TABLE 3.

Beneficial Loan Society of Oregon:

Net income reported before deduction of interest paid to Beneficial Industrial Loan Corporation in 1933 ................................................................ $ 36,490.56

Interest paid to Beneficial Industrial Loan Corporation in 1933 .............................................................. $ 32,372.33

Net income reported after deduction of interest paid to Beneficial Industrial Loan Corporation in 1933 ........................................................... $ 4,118.23

Percentage of net income paid to Beneficial Industrial Loan Corporation in interest in 1933 .......... 88.71

Percentage of net income reported for excise tax purposes 1933 ............................................. 11.29

Net income reported before deduction of interest paid to Beneficial Industrial Loan Corporation in 1934 ........................................................... $ 38,392.04

Interest paid to Beneficial Industrial Loan Corporation 1934 ................................................... $ 35,255.00

Net income reported after deduction of interest paid to Beneficial Industrial Loan Corporation in 1934 ........................................................... $ 3,137.04

Percentage of net income paid to Beneficial Industrial Loan Corporation in interest in 1934 .......... 91.82

Percentage of net income reported for excise tax purposes 1934 ............................................. 8.18

Beneficial Loan Society of Eugene:

Net income reported before deduction of interest paid to Beneficial Industrial Loan Corporation in 1933 ........................................................... $ 9,918.38

Interest paid to Beneficial Industrial Loan Corporation in 1933 ............................................. $ 7,118.33

Net income reported after deduction of interest paid to Beneficial Industrial Loan Corporation in 1933 ........................................................... $ 2,800.05

Percentage of net income paid to Beneficial Industrial Loan Corporation in interest in 1933 .......... 71.76

Percentage of net income reported for excise tax purposes 1933 ............................................. 28.24

Net income reported before deduction of interest paid to Beneficial Industrial Loan Corporation in 1934 ........................................................... $ 10,739.70

Interest paid to Beneficial Industrial Loan Corporation in 1934 ............................................. $ 8,850.00

Net income reported after deduction of interest paid to Beneficial Industrial Loan Corporation in 1934 ........................................................... $ 1,889.70

Percentage of net income paid to Beneficial Industrial Loan Corporation in interest in 1934 .......... 82.49

Percentage of net income reported for excise tax purposes 1934 ............................................. 17.51

Beneficial Loan Society of Salem:

Net income reported before deduction of interest
paid to Beneficial Industrial Loan Corporation
in 1933 ............................................................................ $ 16,427.02

Interest paid to Beneficial Industrial Loan Corpo-
ration in 1933 ................................................................ $ 13,700.00

Net income reported after deduction of interest
paid to Beneficial Industrial Loan Corporation
in 1933 ............................................................................ $ 2,727.02

Percentage of net income paid to Beneficial Indus-
trial Loan Corporation in interest in 1933 .......... 83.64

Percentage of net income reported for excise tax
purposes 1933 ................................................................ 16.36

Net income reported before deduction of interest
paid to Beneficial Industrial Loan Corporation
in 1934 ............................................................................ $ 18,251.02

Interest paid to Beneficial Industrial Loan Corpo-
ration in 1934 ................................................................ $ 16,155.00

Net income reported after deduction of interest
paid to Beneficial Industrial Loan Corporation
in 1934 ............................................................................ $ 2,096.02

Percentage of net income paid to Beneficial Indus-
trial Loan Corporation in interest in 1934 .......... 88.51

Percentage of net income reported for excise tax
purposes in 1934 .......................................................... 11.49

The defendant commission believed that the net profits of said Oregon corporations were distorted by the manner in which their business was conducted, and for that reason demanded consolidated returns from said corporations. Such returns were not forthcoming.

The defendant commission thereupon applied an allocation formula to the consolidated net income of the Beneficial Industrial Loan Corporation and all of its affiliates, apportioning a part of such net income to the state of Oregon, as the basis for an excise tax, to be paid by said three Oregon corporations.

The formula so utilized consisted of taking the average of two respective fractions for each of the years 1933 and 1934, respectively as follows:

(a) A fraction of which the numerator is the average of outstanding loans of the Oregon subsidiaries at the beginning and end of the years 1933 and 1934 respectively and of which the denominator was the average of all outstanding loans of corporations affiliated with the parent corporation during the years 1933 and 1934, respectively.

(b) A fraction of which the numerator was the gross amount of interest received by the Oregon subsidiaries during the years 1933 and 1934 respectively and of which the denominator was the gross amount of interest received by all of the corporations affiliated with the parent corporation during 1933 and 1934, respectively.

The additional excise tax of $6,000, computed on the above basis was paid by the plaintiff; and this proceeding has been instituted to secure a refund of the amount so paid.

One question here is, whether the Oregon corporation mentioned should be relieved of that part of the excise tax for which otherwise said Oregon corporations would be liable, because their stockholders see fit to designate as interest the major part of the net income earned by said Oregon corporations.

We think that the claim of the Oregon corporations to deductions for such purported interest charges, if allowed, would distort the true net profits of said Oregon corporations.

As we view it, the factual background is that of a foreign corporation, through its officers, advancing only $950 for stock in each of the Oregon corporations, securing two residents of Oregon to take stock to the extent of $50; and through these Oregon corporations,

transacting with one such corporation an annual business in excess of $263,000; with another in excess of $124,000; and the third in excess of $85,000; or a total annual business in excess of $472,000; and by the expedient of having the Oregon corporations pay 80 per cent of the net income of the foreign corporation under the term interest, it is sought to evade payment by the Oregon corporations of the excise tax upon a large portion of their actual net incomes.

We are not attempting to assume jurisdiction over a foreign corporation not engaged in business in Oregon; but, unquestionably, the defendant commission and the courts of Oregon have jurisdiction over Oregon corporations.

It is urged by plaintiff that the commission should have shown that 12 per cent interest was an excessive rate of interest for plaintiff to pay; and, only by making such a showing could the commission increase the amount of the tax offered by plaintiff.

That is tantamount to a claim by an individual that 12 per cent per annum is a reasonable amount for that individual to pay for money loaned by himself and a challenge by that individual to the effect that the contrary cannot be proved. It is probably true that no one other than plaintiff's owners would loan money to plaintiff at any rate of interest. It is equally true, in our opinion, that the defendant is not burdened with the necessity of dealing with that question.

Plaintiff stresses the point that defendant commission has not offered a single word of testimony or evidence as to the rate of interest or the cost of money for "this kind of a company". Plaintiff says that under the law it was the commission's duty to make such a showing, if it was to disallow or decrease the deduction.

"This kind of a company" is an Oregon corporation loaning annually in excess of $263,000, with an issue of $1,000 corporate stock, 95 per cent of which is owned by a foreign corporation. It is idle to say that the commission must prove that some one other than the owner of this thousand dollar corporation would loan it $263,000 at a lower rate of interest than 12 per cent per annum in order to enable the Oregon Tax Commission to collect the excise tax prescribed by the Oregon statute upon the actual net income accruing by reason of the business this Oregon corporation conducted in Oregon, under articles of incorporation filed in Oregon, loans made in Oregon under the Oregon Small Loan Act and by authority of an Oregon license.

■ The question confronting the commission is what was the actual net income earned in 1933 and 1934 by plaintiff and its two associated corporations for which it advanced the money now sought to be recovered by plaintiff. The solution of this question, we think, was as closely approximated by the method employed by defendant commission as it could be.

The defendant commission claims to have computed the additional excise tax of $6,000 upon the basis above stated. The plaintiff claims that tax was not computed on that basis, but the same is merely an arbitrary assessment made by the defendant commission.

We think that paragraphs XXXI and XXXII of the agreed statement of facts support the defendant's contention. For the sake of clarity, we note here that exhibits L and M comprise the notices given by defendant to plaintiff of the proposed additional excise tax for the years 1933 and 1934, respectively. The two paragraphs mentioned are identical except that paragraph XXXI refers to Exhibit L and the year 1933; and para-

graph XXXII refers to exhibit M and the year 1934. We quote their language:

"That the amount of tax shown to have been proposed to be assessed by the said Exhibit (L in paragraph XXXI and M in paragraph XXXII) was approximately computed by treating as income taxable by the State of Oregon that proportion of the net consolidated income of Beneficial Industrial Loan Corporation, and all corporations in which it owned a stock interest of ninety-five per cent (95%) or more, for the year (1933 in paragraph XXXI and 1934 in paragraph XXXII) which is the simple average of two fractions which are described as (a) and (b) below"—[Here follows the description of the fractions hereinabove described.]

It is evident from the foregoing agreed statement that the tax in suit was not an arbitrary assessment in the sense that it was not supported by the factual basis claimed for it by the defendant. In the sense that the commission exercised its will and discretion not to be limited in the amount to be assessed by the nature of the reports made by the Oregon corporations, its action might be termed arbitrary; but by the stipulation whereby plaintiff agreed as stated in said paragraphs XXXI and XXXII, above quoted, plaintiff is foreclosed and estopped from claiming that defendant did not have knowledge of the net consolidated income of the Beneficial Industrial Loan Corporation and all corporations in which it owned a stock interest of 95 per cent or more, of the average outstanding loans of all such corporations, or of the gross amount of interest received by such corporations.

It being admitted that the assessments in suit were based upon the data mentioned, we are not concerned with the procedure by which that data was procured by defendant commission.

The plaintiff argues that the defendant commission was without any statutory authority to adopt the method, which it did, in computing the tax in suit.

■ Section 69-1325, Oregon Code 1930, as in force when the assessment under consideration was made, among other things, provided:

"Where the commission has reason to believe that the true income is not reflected in a return made by a corporation which is affiliated with another or other corporations, within the meaning of this section, it may require separate or consolidated returns from said corporations and apply the tax upon the next [net] income *determined therefrom.* For the purpose of this section two or more corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the voting stock of the other or others, or (2) if at least 95 per centum of the voting stock of two or more corporations is owned by the same interests. The corporations which may be joined in a consolidated return shall, for the purpose of this act, be treated as one taxpayer, and taxable only upon their consolidated profits properly attributable to the state of Oregon."

It will be seen that, by the above statutory provision, the commission had authority to require separate or consolidated returns from the Oregon corporations in suit and to treat them as one taxpayer, it being stipulated that 95 per cent of their stock is owned by the same interests.

■ We cannot agree with plaintiff that section 69-1325 gives or purports to give the defendant commission powers to compel the filing of consolidated or any return by a foreign corporation not doing business in Oregon.

It is true that there was some correspondence on the subject of a consolidated return between defendant commission and Beneficial Industrial Loan Corporation. It is also true that the notices known herein as exhibits

L and M are addressed to the parent company and its three Oregon subsidiaries; but the assessments in suit were upon the net income of the Oregon corporations only; and only one Oregon corporation paid them.

Whatever interests own 95 per cent of the voting stock of the two or more Oregon corporations, whether such interests are individual, fiduciary or corporate, such ownership constitutes the Oregon corporations, so owned, affiliated corporations. To require returns pertinent to their liability as taxpayers from such affiliated Oregon corporations does not constitute the assumption of any jurisdiction or control over a foreign corporation owning the stock in question.

■ Such a return was required of said corporations as to the years 1933 and 1934, and the same was not made.

Section 69-1316, Oregon Code 1930, provides that—

"If any return required by this act is not made, the commission is authorized to make an estimate of the net income and the amount of the tax due under this act from any information in its possession, and to order and state an amount according to such estimate for the taxes and penalties due to the state."

We think that this section of the statute (section 69-1316) confers authority upon the defendant commission to make an assessment based upon such a computation as that which was employed herein. It certainly is stipulated that defendant commission had the information in its possession upon which the allocation was computed; and it is from information in possession of the commission that the statute authorizes the commission to make an estimate of the net income and the amount of the tax due to the state.

The method employed by defendant commission in determining the amount of tax is similar to the methods

followed in the following cases: *Underwood Typewriter Co. v. Chamberlain,* 254 U. S. 113, 41 Sup. Ct. 45, 65 L. Ed. 165; *Bass, Ratcliff & Gretton, Ltd. v. State Tax Commission,* 266 U. S. 271, 45 Sup. Ct. 82, 69 L. Ed. 282; *Norfolk & W. Ry. Co. v. State of North Carolina,* 297 U. S. 682, 56 Sup. Ct. 625, 80 L. Ed. 977; *S. S. Kresge Co. v. Bennett,* 51 Fed. (2d) 353, Affd. 287 U..S. 565, 53 Sup. Ct. 13, 77 L. Ed. 498.

The specific formula prescribed by statute in each of the foregoing cases was employed by the tax levying body; and it is argued in the instant case in effect that without specific designation by statute of the formula used, the commission had no authority to use same. We think that this contention is unsound.

Having made a computation which very closely approximates the actual net income earned by the Oregon corporations, and having ordered and stated to the corporations affected the amount due to the state according to such estimate, we think that the defendant commission acted pursuant to and under the authority vested in it by statute: Section 69-1316, Oregon Code 1930.

■ In this state of the case, in order to justify a refund, the plaintiff had the burden of presenting a method which would more accurately reflect the income so earned. This, the plaintiff, attempted by insisting that the commission must show that 12 per cent per annum was an excessive interest charge. We think that the burden was upon the plaintiff to show that it was reasonable and a mere statement of the fact that an organization was advancing large sums of money to itself for purposes and under circumstances, which would prevent any other concern from making such advances, is a complete refutation that the interest

charge was bona fide, that it was reasonable, or that it should be considered as interest at all.

Plaintiff introduced testimony to the effect that 6.4 per centum of the working capital provided by the Beneficial Industrial Loan Company to the Oregon corporations was procured through short term bank loans at an average cost in interest of 4.375 per cent; 10 per cent thereof through the sale of debenture bonds at an average cost of 13.29 per cent, including 6 per cent interest and average discount of 7.29 per cent; 20 per cent thereof through the sale of preferred stock at an average cost of 8 per cent in discount; and 63.6 per cent thereof through the sale of common stock at an average cost of 12 per cent.

It will be noted that only 16.4 per cent of the working capital advanced to the Oregon corporations was obtained in borrowing transactions involving the creation of indebtedness and the payment of interest, and 83.6 per cent of such capital was obtained through the sale of capital stock. This does not nor does any other part of the record tend to show that a properly capitalized corporation conducting a small loan business in Oregon would be compelled to pay 12 per cent interest on borrowed working capital.

In the case of *United States Rubber Co. v. Query,* 19 F. Supp. 191, cited by plaintiff, it appears that the plaintiff was a New Jersey corporation with its principal office in New York. In 1930, plaintiff organized several subsidiary Delaware corporations. The subsidiaries paid an excise tax to South Carolina. The tax commission of South Carolina sought to require plaintiff to pay an excise tax under an allocation theory contending that plaintiff was engaged in business in South Carolina through its subsidiary companies. The

court held, (1), that ownership of stock of a controlled subsidiary doing business in South Carolina, having a separate legal entity, does not subject the corporation owning the stock to the jurisdiction of the state so as to permit a franchise tax; (2), that the phrase ''doing business in the state'' implies that the foreign corporation is conducting activities within the state which the state could prevent; (3), that a foreign corporation leasing a plant to a South Carolina corporation was not doing business within the state; (4), that the power of a state to levy a franchise tax on a corporation is dependable upon a corporation's presence within the state.

The distinction is obvious between that case and the case at bar. There was much more in the instant case than mere ownership by the Delaware corporation of the stock of the Oregon corporations. The Delaware corporation furnished the capital and controlled the management of the Oregon corporations. Through the Oregon companies the Delaware corporation conducted the small loan business in Oregon. In the South Carolina case the New Jersey corporation merely owned the stock of, and leased property to, the South Carolina subsidiary. Considering the record in the instant case, we think that it would be difficult to devise a scheme which would more clearly disclose that the Delaware corporation was actively conducting a small loan business under the guise and name of the three Oregon corporations; and that one of its purposes was to avoid the payment of the prescribed excise tax upon such business.

The case of *People ex rel. Studebaker Corporation of America v. Gilchrist, et al.,* 244 N. Y. 114, 155 N. E.

68, is also cited by plaintiff. As we read this case, it holds that where a parent corporation is engaged in the manufacture of a product in one state and its subsidiary corporation is engaged in selling the product of its parent corporation in another state, unless the tax commission of the latter state, in estimating the taxable net income accruing from the sales of the subsidiary takes into consideration a reasonable profit to the parent company for manufacturing the product, the tax commission's estimate is invalid.

The New York court, in its prevailing opinion, declined to inquire whether the state of New York might disregard the subsidiary as a mere cover or pretense and levy a tax upon the parent as upon a corporation doing business in New York through the instrumentality of an agent. In the opinion it is stated that "If this, or something not unlike, might have been done, the commission has not sought to do it."

In the case at bar, the commission has sought to correct the effect of an apparent distortion of the net profits of the Oregon corporations. In the New York case, no reference is made to any such statutory provision as that upon which the Oregon tax commission in the instant case sought to make the correction just mentioned.

In addition to the under capitalization of the Oregon corporations, the comparatively large amounts advanced by the Delaware corporation and the high rate of interest sought to be deducted from the net income of the Oregon corporations, which, in the absence of anything further, plainly evidences the distortion mentioned, we think that we may consider the legislative declaration of the state of Delaware as to what constitutes legal interest.

We quote Delaware's statutory provision on that subject:

"3101. Sec. 1. Legal Rate; Usury; Penalty:—The lawful rate of interest for the loan or use of money, in all cases where no express contract shall have been made for a less rate, shall be six per cent per annum; and when a rate of interest for the loan or use of money exceeding that established by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay the creditor the excess over the legal rate and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of any debt; and in all cases where any borrower or debtor shall heretofore, or hereafter, have voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate, such borrower or debtor, or his personal representative, may recover in an action against the person who shall have taken or received such debt and interest, or his personal representative, the amount so paid which is in excess of said debt together with interest at the lawful rate, if such action be brought within one year after the time of such payment; provided that nothing in this section shall affect the holders of negotiable paper taken bona fide in the usual course of business; and that persons, firms and corporations, registered under the provisions of Article 32 of Chapter One Hundred, on loans not exceeding Five Hundred Dollars, may charge the rates of interest therein provided; and that no corporation shall hereafter interpose the defense of usury in any action. The term corporation, as used in this section, shall be construed to include all associations and joint stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships." Revised Code of Delaware, Chap. 77, Article 9, p. 691, Par. 3101, Sec. 1.

We are not concerned with the clause of the foregoing section prohibiting corporations from interpos-

ing the defense of usury in any action, nor are we unmindful that the courts uphold the validity of such legislation: 16 C. J. S., Constitutional Law, Sec. 504, pp. 991-992, cases cited in note 1, (1) and (2). Neither do we pause to decide whether a corporation may maintain an action under the Delaware statute to recover money voluntarily paid despite the provision that it may not interpose usury as a defense. We are not concerned with these questions for the reason that the question here is not as to the procedural rights of the Oregon corporations against their parent corporation.

We advert to the statutory provisions above quoted because we think they clearly distinguish interest from usury. Lawful interest is declared by the Delaware statute to be 6 per cent per annum, hence, usury is any exaction for the use of money in excess thereof.

The Oregon statute designates interest as a deductible item: Section 69-1308, Oregon Code 1930, as amended by chapter 273, Oregon Laws 1931. It nowhere so designates usury.

The Oregon tax commission had no authority to allow such deduction. Plaintiff has tenaciously urged that it should be allowed. There was no alternative for the commission, except to levy the assessment upon the information in its possession. Neither before the commission nor the trial court has plaintiff shown wherein the commission was materially in error. Nothing was presented by plaintiff on appeal to this court reflecting the actual net income earned by the three Oregon corporations involved during the years mentioned.

The decree of the circuit court should be affirmed. It is so ordered.

BELT and LUSK, JJ., not sitting.