## C. SUMNER BURROUGHS v. WILLIAM H. EASTMAN, JOHN JOHNSON, AND WILLIAM J. HURLEY.

*False imprisonment—City officers—Jurisdiction of superior court of Grand Rapids.*

The superintendent, captain, and lieutenant of the police force are not city officers, within the meaning of How. Stat. § 6576, which vests in the superior court of the city of Grand Rapids exclusive jurisdiction of all actions of a civil nature which may be brought against any of the officers of said city.

Error to Kent. (Adsit, J.) Submitted on briefs October 14, 1892. Decided November 4, 1892.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*James E. McBride,* for appellant.

*William Wisner Taylor,* for defendants.

LONG, J. The defendants, who are, respectively, superin-
93 MICH.—28.

tendent, captain, and lieutenant of the police force in the city of Grand Rapids, were prosecuted by a writ of *capias ad respondendum,* issued out of the circuit court for the county of Kent. Defendants gave bail to the sheriff, and in due time bail to the action, and before the time limited for filing their plea they interposed a special motion to quash the writ, because the defendants, in the commission of the alleged grievances, were acting as city officers of the city of Grand Rapids, and, under the act creating the superior court of that city, exclusive jurisdiction of all actions of a civil nature which may be brought by or against said city, or by or against any of its officers, is vested in said superior court. The circuit court, upon the hearing of this motion, granted it, and dismissed the case. Plaintiff brings error.

The affidavit upon which the writ was issued alleges substantially that the plaintiff is the manager of an opera house in the city of Grand Rapids; that the defendants are, respectively, superintendent, captain, and lieutenant of the police force of that city, and were acting as such when it came to their attention that the plaintiff had advertised to the public of that city and county that on Sunday evening, September 20, 1891, he would present and produce on the stage of said opera house a moral and instructive play, by a company controlling the same, called the "Rocky Mountain Waif," the proceeds to be used largely for charitable purposes; that, shortly after the play commenced, the defendants, as such officers, entered upon the stage where the plaintiff was managing the business, and then and there made an assault upon him, and beat, bruised, struck, wounded, maltreated, and arrested him, and against his will put a pair of handcuffs upon his wrists, in the presence of the people in attendance there, and pushed and dragged him through the opera house to the public street, and through such public street to the police headquarters, and detained and imprisoned him

there for the space of one hour, when the plaintiff gave security for his appearance at the police court of said city at 9 o'clock on the next morning; that he had not been guilty of nor committed any breach of the peace, felony, or any other offense, and was arrested solely for the reason that he produced such play on Sunday evening; that on Monday morning he appeared before such police court in the presence of the judge, and while such court was in session demanded to be shown the complaint and warrant against him, but no complaint, up to that time, had been made, and no warrant issued, and thereupon he demanded his discharge, and was discharged and released by said court without day; that no complaint has ever since been made or warrant issued by any court of competent jurisdiction for the arrest or prosecution of him for said alleged unlawful act; that he was a law-abiding citizen of good fame and character in that community where he lived, and that by reason of the assault aforesaid, and said arrest, and in being handcuffed in the presence of the people there assembled, and dragged through the streets of said city, without due process of law, he was rendered sick, sore, lame, and disordered in body, and suffered great mental anguish, and was greatly scandalized, injured, and prejudiced in his good name and fame, and was disabled from attending to his affairs and business for a long space of time, to wit, 48 hours, and was put to a large expense, etc.

The sole question in this case is whether the superior court act of the city of Grand Rapids deprived the circuit court of Kent county of jurisdiction of the cause of action stated in the declaration.

Section 13 of that act, as amended in 1881 (Laws of 1881, p. 98), provides as follows:

"Said superior court shall have exclusive jurisdiction of all actions of a civil nature, at law or in equity, which may be

brought by or against the board of education of such city, or by or against the said city or any of its officers," etc.  How. Stat. § 6576.

The contention of plaintiff's counsel is that, although the defendants were, respectively, superintendent, captain, and lieutenant of the police force, and were acting as such at the time of this arrest, as set forth in the affidavit for the writ, yet they were merely an additional force of constables and watchmen appointed for certain limited purposes, possessing original constabulary powers, and as such were officers of the State, and not properly city officers, within the meaning of the superior court act.  It is contended, further, that by the "city officers," as used in this statute, is meant only such officers as are provided for by the charter for general municipal purposes.

Section 1 of title 2 of the charter of the city (Act No. 436, Local Acts of 1887) provides:

"The officers of said city shall be one mayor, one treasurer, one comptroller, one clerk, one marshal, one director of the poor, a board of review and equalization, to consist of three members, two aldermen in each ward of said city, one supervisor in each ward, and one constable in each ward of said city, all of whom shall be elected.  *  *  *  Also one city physician, and so many common criers, keepers of almshouses, workhouse, and penitentiary, pound-masters, inspectors of firewood, inspectors of highways, weighmasters, and auctioneers as the common council shall from time to time direct; all to be appointed as hereinafter provided."

Section 4 provides for a city attorney and an assistant in addition to the above, but in no other place in the charter are police officers named or designated as such officers.

By an act approved May 24, 1881, creating the board of police and fire commissioners of the city,[1] this board is vested with sole power to elect or appoint and remove police constables and the managing officers of the police force.  This is provided for by section 8 of the act.  By

[1] Act No. 389, Local Acts of 1881.

section 9 of the act it is provided that these officers "shall have the same power as constables now have by law, except as to the service and return of civil process and proceedings in civil cases, and shall be subject to the same liability, except as otherwise provided by law."

We are of the opinion that plaintiff's counsel is correct in his contention. The statute creating the superior court must be construed with reference to the provisions of the charter of the city of Grand Rapids and the police force act; and from an examination of the three acts it appears that policemen of the city and the police officers are not named in the charter, and do not come within the designation of the superior court act as city officers. They are not subject to removal under the provisions of the law for the removal of city officers. They are not elected or appointed under the provisions of the charter, but by authority vested in the board of police of the city. *Attorney General v. Cain,* 84 Mich. 223.

But this is not all. The complaint here made is that the three defendants jointly committed an aggravated assault and battery upon the person of the plaintiff, arrested and handcuffed him, and dragged him through the streets of the city, within the gaze of the people, and without any previous warrant authorizing such arrest, although at the time he was not committing any breach of the peace, and had not committed any felony or other offense, and had not been suspected of the commission of any such offense; and that, after thus humiliating him, he was discharged out of custody without any complaint being made against him for any offense. It is very doubtful whether, under the circumstances here stated, the circuit court would have been ousted of jurisdiction had the offense been committed by a constable or other officer enumerated in the charter as an officer of said city; but, be that as it may, these officers were not enumerated in the charter as city officers,

and the circuit court was in error in holding that the jurisdiction to try the cause was vested exclusively in the superior court.

The order quashing the proceedings, and the judgment in favor of the defendants, must be vacated, with costs, and a new trial ordered.

The other Justices concurred.