## No. 13,511.

McNichols, Auditor *v.* People ex rel. Cook.

(35 P. [2d] 863)

Decided June 28, 1934.

Mr. James D. Parriott, Mr. Frederick P. Cranston, Mr. Frank L. Hays, for plaintiff in error.

Mr. James A. Marsh, Mr. Benjamin E. Sweet, for defendant in error.

Mr. Horace N. Hawkins, amicus curiae.

236

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as the auditor, defendant in error as Cook, and the City and County of Denver as the city.

Salaries of members of the police department are fixed in the city charter. By ordinance they were reduced ten per cent. The auditor tendered Cook, a police sergeant, a warrant for the first half of his January, 1934, salary, less the reduction. Cook refused the warrant and brought mandamus to compel payment at the charter rate. The alternative writ was issued and on final hearing was made peremptory. To review that judgment the auditor brings error.

Article XX of the state Constitution furnishes the plan under which the city charter exists. Section 2 thereof provides that the officers of the city "shall be such as by appointment or election may be provided for by the charter," and that, if any of them receive compensation the same shall be "a stated salary, the amount of which shall be fixed by the charter." Section 3 of said article provides that members of the police department of Denver (the predecessor of the city) shall continue as such under the city until discharged under such civil service regulations as the charter shall provide.

It would seem too clear for argument that policemen and firemen ordinarily stand in the same relative position to the municipal government. It would also seem clear that they may be either officers or employees, as the legislative department may determine. The authorities so hold. In some instances they are officers. *State ex rel. Knez v. City of Seattle* (Wash.), 28 P. (2d) 1020; *McDonald v. City of New Haven*, 94 Conn. 403, 109 Atl. 176; 10 A. L. R. 193. In others they are employees. *Burroughs v. Eastman*, 93 Mich. 433, 53 N. W. 532; *State v. Edwards*, 38 Mont. 250, 99 Pac. 940. It has even been held that,

under certain constitutional and statutory provisions, the chief of police is not such. 43 C. J., p. 753, §1292.

The question here presented is not, Are policemen officers in certain municipalities in certain states? But, Are policemen officers under the terms of the charter of the city? The first and all subsequent charters of the city have fixed police salaries. The first charter, adopted in 1904, also provided that all city servants whose compensation was not fixed by charter, "are hereby declared to be employees" whose remuneration should be fixed by ordinance. Such salaries were altered by section 30 of the 1916 amendment, and section 31 thereof reenacted the last mentioned provision, which is still in effect. The charter amendment, under which Cook claims, was passed in 1923, to take effect January 1, 1924, and the necessary appropriation has been made. Section 12 of the charter, which is a portion of said amendment of 1916, purports to authorize the council, by ordinance, to reduce the "salary or compensation of all officers and employees," on the recommendation of the mayor "whenever, in the judgment of the mayor and his cabinet, public finances or the financial condition of the City and County and its citizens require it." Purporting to act thereunder, the council passed ordinance 73, series of 1933, reducing salaries, including that of Cook, ten per cent. It recites that, "In the judgment of the mayor and his cabinet, the public finances and the financial condition of the City and County of Denver," require it, and that the mayor has submitted it in accordance with the provisions of said section 12. The lower court held said section 12, as applied to police officers, unconstitutional, and said ordinance 73 therefore void to that extent. That ruling is one of the errors relied upon by the auditor. If it was correct the judgment must be affirmed.

Much space is devoted in the briefs to the question of the status of Cook, i. e., whether he is an officer or an employee of the city. The city has settled that question by its charter. It was obliged by said article XX

of the Constitution to name its officers and fix their salaries by charter. The charter, however, was no proper place for the designation of employees or the fixing of their compensation. The city could, within reasonable limits, declare who were officers and who were employees. Of course it could not do the absurd or the impossible. It could not make black, white. It could not make the mayor a mere employee, or a ditch digger an officer. It certainly had discretion, however, to fix the status of such of its servants as policemen. It took a logical course, and one clearly contemplated by the Constitution, from which its powers were derived and by which they were limited. It fixed certain salaries, including those of policemen by charter, thus clearly implying, at least, their status as officers. It made that implication definite, however, by declaring that all its servants whose compensation was not fixed by charter should be employees. Cook, therefore, by solemn declaration of the city itself, is an officer, and his compensation must be fixed, by constitutional mandate, by charter. It was so fixed in 1923, and so remains unless lawfully reduced by said ordinance 73. The validity of that ordinance rests solely upon said section 12. If the latter is unconstitutional the council was powerless to pass the former.

Salaries of officers must be fixed by charter. Cook is an officer. Said section 12 authorizes the council to reduce salaries of officers (refix them) by ordinance. No limit, either in time or amount, is prescribed for such reduction. They are to be made only by ordinance, submitted by the mayor. He may submit such an ordinance whenever, in the judgment of himself and his cabinet ''the public finances or the financial condition of the City and County and its citizens require it.'' There is no established rule to guide or bound that judgment. It may be exercised on any theory of policy. The section might as well have provided for a reduction of salaries whenever the mayor and his cabinet desired to otherwise apply the revenue. Reductions are therefore subject

to mere whim or caprice. This is no suggestion that the city officials have so acted. In fact the record clearly indicates the contrary. But the test of constitutionality is not what has been done under questioned legislation but what may be done under it. Clearly the purposes of the constitutional provision were stability and security. Said section 12 obliterates both. The conclusion seems so inevitable as to make authorities superfluous, but such are not wanting. The Supreme Court of Washington held that where, under similar laws, no salary for an officer was fixed by charter, no salary attached to the office. *Taylor v. City of Tacoma,* 8 Wash. 174, 35 Pac. 584. It has been repeatedly held that a power to fix salaries, vested in one department, cannot be delegated to another. *Doherty v. County of Ransom,* 5 N. D. 1, 63 N. W. 148; *Dougherty v. Austin,* 94 Cal. 601, 29 Pac. 1092; *Moore v. Humboldt Co.,* 48 Nev. 397, 232 Pac. 1078.

As to the grave emergencies which, we are told, said section 12 is essential to meet, it is sufficient to say that even these can not justify an amendment to the state Constitution by a city charter, nor an amendment of a city charter by a simple ordinance. As to the particular emergency it would seem that, if the experience of the city has been similar to that of the country at large, ample opportunity has been afforded to meet it by charter amendment.

The judgment is affirmed.

MR. JUSTICE CAMPBELL not participating.